# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GEORGE DEWBERRY,

        Petitioner,      :      Case No. 3:21-cv-158

- vs -                            District Judge Walter H. Rice
                                     Magistrate Judge Michael R. Merz

WARDEN, Lebanon
  Correctional Institution,

                                      :

        Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court on Petitioner's Objections (ECF No. 15) to the Magistrate Judge's Report and Recommendations proposing dismissal of the Petition (Report, ECF No. 14). District Judge Rice has recommitted the case for reconsideration by the Magistrate Judge in light of the Objections (ECF No. 16).

**Standard of Review**

Petitioner correctly notes that, as a litigant faced with an unfavorable Magistrate Judge Report, he is entitled to review *de novo* by the District Judge of every portion of the Report to which he has made substantial objection (Objections, ECF No. 15, PageID 1473, citing 28 U.S.C. § 636(b)). However the same statute permits a District Judge to recommit a matter to the

1

Magistrate Judge before performing his or her final *de novo* review. 28 U.S.C. § 636(b)(1)(C). That is what District Judge Rice has done in this case, consistent with longstanding practice.

**Relevant Findings of Fact**

The Objections contain a lengthy factual discussion, both of the crime in suit and of its litigation in the Common Pleas Court of Montgomery County (Objections, ECF No. 15, PageID 1470-72). Factual assertions in this portion of the Objections are cited to transcripts of testimony in the Common Pleas Court. However, a habeas corpus court is not free to make its own findings of fact from trial court testimony. Instead we are bound to accept findings of fact by the state courts, trial or appellate, unless a petitioner rebuts those findings by clear and convincing evidence. 28 U.S.C. § 2254(e); *Warren v. Smith*, 161 F.3d 358, 360-61(6th Cir. 1998). Moreover, the evidence to be considered must have been introduced in the state courts. *Cullen v. Pinholster*, 563 U.S. 170 (2011).

Because of these limitations, the Magistrate Judge has limited his factual citations, both here and in the original Report, to the decision on direct appeal, *State v. Dewberry*, 2020-Ohio-691 (Ohio App. 2d Dist. Feb. 28, 2020)(Froelich, J.)("*Dewberry I*"), supplemented by reference to Judge Barbara Gorman's decision on the motion to suppress (Decision and Entry, State Court Record 8, Ex. 6, PageID 81). Judge Froelich's opinion is quoted at length in the original Report, so the reader can assure himself or herself the Magistrate Judge has not taken findings out of relevant context. (ECF No. 14, PageID 1445-57, 1461-63).

2

# Analysis

Both of Petitioner's Grounds for Relief relate to his motion to suppress his pre-trial identification by Laura Castro. In Ground One he claims a violation of his right to compulsory process when the trial court refused to call Castro as a witness at the suppression hearing. In Ground Two he asserts his due process rights were violated by use of an unduly suggestive procedure in conducting the pretrial identification. Under relevant Supreme Court precedent, *Neil v. Biggers*, 409 U.S. 188 (1972), the second question is logically prior and will be discussed first.

**Ground Two:  Use of an Unduly Suggestive Identification Procedure**

Jesse Pierce and Laura Castro, his girlfriend, were shot multiple times while seated in Castro's car on the night of August 20, 2015; Pierce, the apparent target of the attack, succumbed to his wounds, but Castro survived. *Dewberry I*, ¶ 3.  Upon interview in the hospital the next morning, Castro did not identify Dewberry nor did she pick him from a photographic lineup with which she was presented five days later[1]. *Id.* at ¶ 3. After she was released from the hospital, she left Dayton. *Id.* A month later she called police and told them she actually knew who the shooter was[2]. *Id.* Meeting with police in September 2015, she presented them with a picture of Dewberry downloaded from Facebook. *Id.* On September 25, 2015, she then picked him from an array of the

---

[1] The state courts found she did not make an identification on either of these occasions, not that she could not.
[2] There was ample reason for Castro to fear Petitioner.  Not only had he tried to kill her, apparently only because she was a witness to the Pierce killing, but he had just been released from federal prison on a firearms charge a few months before the shooting.  See *United States v. Dewberry,* Case No. 3:12-cr-042.

3

same photos she had been shown previously, albeit in a different order, and told them she was 100% sure of her identification. *Id.*

Dewberry moved to suppress statements he had made and the results of a search of his house. *Id.* at ¶ 6; Motion, State Court Record, ECF No. 8, Ex. 2. He moved separately to suppress Castro's photo identification. *Id.* at ¶ 6 and Ex. 3. The first Motion was heard on March 18, 2016, at which time the trial judge indicated the hearing on the second motion would be March 29 and she would decide then whether the complaining witness would be called. *Dewberry I* at ¶ 7. After the March 29 hearing at which four police officers testified, the court allowed briefing on whether the complaining witness should be called. *Id.* at ¶¶ 7-8.

The briefing focused on whether the procedures used were unduly suggestive. *Id.* at ¶ 8. Defense counsel asked that the identification be suppressed as unduly suggestive or, alternatively, to require Castro to testify. *Id.* The prosecutor responded that if the identification were found to be unduly suggestive, it would request a hearing on reliability of the identification at which the State would call Castro. *Id.*

Having considered the briefs, Judge Gorman overruled the motions to suppress in their entirety. *Id.* at ¶ 9. She held that to warrant suppression the procedure used must be "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification' and that the identification itself was unreliable under the totality of the circumstances." (Decision and Entry, State Court Record 8, Ex. 6, PageID 81, quoting *Ohio v. Sherls*, 2002-Ohio-939 Ohio App. 2nd Dist. 2002), quoting in turn *Neil v. Biggers*, 409 U.S. 188, 199 (1972). As a matter of law, she held, the initial burden falls on the defendant to show that the photospread identification procedure is unduly suggestive. *Id.* at PageID 82. "If, however," she

4

continued, "the defense fails to establish the first prong (an unduly suggestive identification procedure), the Court need not even consider facts regarding reliability of the identifications because in that situation, questions of reliability go to weight of the testimony at trial, not admissibility." *Id.*, citing *Neil v. Biggers*. For reasons she spelled out in the Decision, Judge Gorman found the photo identification procedure which resulted in Castro's identification of Dewberry was not unduly suggestive so that Castro was not required to testify at a suppression hearing. *Id.* at PageID 82-84. Applying *Neil*, the Court of Appeals found no error in this conclusion. *Dewberry I* at ¶ 76. This is a reasonable application of *Neil* and therefore entitled to deference under 28 U.S.C. § 2254(d)(1).

In objecting to the Magistrate Judge's recommendation on the Second Ground for Relief, Dewberry admits that the first step in a *Biggers* analysis is determining whether the identification procedure is unduly suggestive (Objections, ECF No. 15, PageID 1478). In this case, he argues, "the Magistrate Judge found that Mr. Dewberry has not established how the identification procedure was suggestive." *Id.* at PageID 1479. To the contrary, at the habeas corpus stage the question is not whether the identification procedure was unduly suggestive, but rather whether the state court findings at both levels that it was not unduly suggestive are clearly erroneous.

Whether an identification procedure as implemented was unduly suggestive is a context-sensitive finding of fact. The finder of fact on that question is the trial court judge ruling on the motion to suppress. Dewberry points to no facts in the record that Judges Gorman and Froelich[3] ignored. Nor does he point to the conclusions of any other court that the facts he relies on here clearly and convincingly show suggestiveness.

---

[3] Judge Froelich wrote the opinion for the Second District which Judges Tucker and Donovan joined.

5

Dewberry is correct, as the state courts found, that there was a minor deviation with the second photo array from the procedure prescribed by state statute for photospreads, Ohio Revised Code § 2933.83. That statute undoubtedly was adopted to improve the reliability of photospread identifications, a known source of misidentification. See BRANDON L. GARRETT, CONVICTING THE INNOCENT: WHERE CRIMINAL PROSECUTIONS GO WRONG (2012). The Report concluded that there was no way in which the deviation from the statute in this case made the procedure suggestive and in any event the Due Process Clause does not constitutionalize every state criminal procedure statute. (Report, ECF No. 14, PageID 1466, citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)). Dewberry objects "There may not be a federal due process obligation to follow all procedures, but there certainly is a duty to follow all procedures which concern one's freedom of liberty as it is a cornerstone of our legal system." (Objections, ECF No. 15, 1480). He offers no citation of authority for that proposition, much less a showing that such a proposition is within a holding of clearly established United States Supreme Court precedent as required by 28 U.S.C. § 2254(d)(1).

The Objections criticize the reliability of Ms. Castro's identification at length (ECF No. 15 PageID 1482-84). But the reliability factors prescribed by *Neil v. Biggers* are not considered on a motion to suppress unless a defendant meets the "unduly suggestive" threshold. If he does not, as Dewberry did not here, the arguments about reliability go to the weight of the identification, not its admissibility, as Judge Gorman concluded, citing *Biggers*. (Decision and Entry, State Court Record, ECF No. 8, Ex. 6, PageID 82). Thus all of the questions Dewberry raises about reliability – Castro's opportunity to see, whether she had met him before, etc. – were perfectly proper to raise on cross-examination and to argue to the jury, but they do not go to suppression because the

identification procedure had not been found to be suggestive.

Upon consideration of the Objections, the Magistrate Judge adheres to his prior conclusion that the Second Ground for Relief should be dismissed on the merits.

**Ground One: Denial of Compulsory Process**

In his First Ground for Relief, Dewberry claims Judge Gorman's failure to require testimony from complaining witness Castro at the suppression hearing denied his right to compulsory process under the Sixth Amendment. The Second District agreed that failure to call Castro violated the Sixth Compulsory Process Clause, but found the error harmless because Castro's testimony at trial showed her identification of Dewberry was reliable. *Dewberry I* at ¶ 84.

The Report found this Second District conclusion was a reasonable application of the Supreme Court's general analysis of harmless error in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), and that Court's own application of harmless error analysis to failure to allow defense witnesses in *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)(Report, ECF No. 14, PageID 1458). Thus the Second District's decision was entitled to deference.

The Objections acknowledge that, to prevail on a compulsory process claim, there must be "some showing that the evidence lost would be both material and favorable to the defense." (ECF No. 16, PageID 1475, quoting *Valenzuela-Bernal* 458 U.S. at 873). Castro's testimony would have been material, but the Report found Dewberry made no showing it would have been favorable. To show how unfavorable her testimony would have been, the Report cites her trial testimony actually

7

identifying Dewberry under intense cross-examination.⁴ Dewberry objects:

> [S]uppression hearings are different proceedings than trials, in which different testimony is elicited. The Magistrate Judge's reliance on a different proceeding that did not exist at the time is misplaced as that is no indication of how Ms. Castro would have testified at a separate hearing on identification procedures. Had Ms. Castro been required to testify by the trial court, it is evident that her testimony would have rendered a different outcome at trial.

(ECF No. 15, PageID 1474).

It is no mystery why Dewberry's trial attorney would have wanted Ms. Castro on the witness stand in the suppression hearing: it would have provided a discovery opportunity, a chance to lock her sworn testimony in place, providing a chance for cross-examination at trial if she changed her story at all. For the same reason, defense counsel in felony cases prefer to have preliminary hearings rather than have cases taken directly to the grand jury: it allows a chance for discovery.⁵ But the fact that cross-examining Castro in the suppression hearing would have been useful does nothing to show it would have been favorable to Dewberry. Petitioner's speculation that it would have been favorable as compared to her very damaging trial testimony is just that – speculation. Without any proof Castro's suppression testimony would have been favorable, Dewberry's First Ground for Relief fails.

**Conclusion**

Having reconsidered the case in light of the objections, the Magistrate Judge again

---

⁴ As the Second District pointed out, identity was the principal issue at trial. *Dewberry I* at ¶ 19.
⁵ This discovery tactic is far more useful in Ohio municipal courts where the Rules of Evidence preclude hearsay than in federal courts, where they do not.

respectfully recommends the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 18, 2022.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #